JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.C., | Case No.: 5:18-cv-01535-SVW-SHK |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT** |
| ALTA LOMA SCHOOL DISTRICT, | |
| Defendant. | |

## I.     Introduction

Plaintiff L.C. initiated this action seeking review of the decision of an administrative law judge (the "ALJ") with the California Office of Administrative Hearings ("OAH"), in which the ALJ denied Plaintiff's due process complaint pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* (the "IDEA"), filed against Defendant Alta Loma School District (the "District"). *See* Dkt. 1. In the due process complaint, Plaintiff asserted that the District unnecessarily delayed in bringing its own due process complaint against Plaintiff and his parents; the District's due process complaint had alleged that Plaintiff was seeking an independent vision therapy evaluation, a form of an independent educational evaluation (an "IEE") that the District must offer to students at public expense, from an evaluator of Plaintiff's choice who did not meet the District's requirements under its IEE policy. The District ultimately

1

withdrew its due process complaint shortly before a hearing before the ALJ, and following the hearing, the ALJ ruled that the District did not unnecessarily delay in filing its due process complaint against Plaintiff.

On March 25, 2019, the Court held a pretrial conference to better assess the parties' substantive arguments regarding Plaintiff L.C.'s claim for review of the administrative hearing. Following the pretrial conference, the Court continued the bench trial date and requested supplemental briefing regarding outstanding issues not addressed at the pretrial conference. *See* Dkt. 50. After the parties submitted their supplemental briefs, the Court vacated the bench trial and took the case under submission. *See* Dkt. 55.

Having carefully reviewed and considered the administrative record, supplemental evidence presented, and the parties' trial briefs, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II.    Findings of Fact

The following findings of fact are based on (1) the administrative record for the underlying proceedings before OAH, lodged by Plaintiff on February 14, 2019, see Dkt. 37; (2) the declaration of Tania L. Whiteleather, Dkt. 28-4 ("Whiteleather Decl."), and accompanying Exhibits 1-6, Dkts. 28-5–28-10;[1] (3) the declaration of Maryam Rastegar, Dkt. 43-3 ("Rastegar Decl."), and attached Exhibits A-F; and (4) the declaration of Jonathan P. Read, Dkt. 43-4 ("Read Decl."), and accompanying appendix of exhibits, Dkt. 43-5.[2]

### A.    Plaintiff Requests an IEE

During the relevant time period at issue in this case, Plaintiff was 11 years old and attended sixth grade at a school within the District. *See* Administrative Record ("AR") 356.

On August 10, 2017, Plaintiff's advocate, Peter Attwood, emailed the District and represented that Plaintiff had not received a proper assessment for special educational needs over at least the prior two years. *See* AR 341. Attwood conveyed Plaintiff's interest in having the

---

[1]    The Court granted Plaintiff's motion to supplement the administrative record with the Whiteleather Declaration and accompanying exhibits. *See* Dkt. 41.

[2]    The Court granted the District's ex parte application to supplement the administrative record with the Rastegar Declaration and the Read Declaration. *See* Dkt. 44.

District agree to assess Plaintiff in all suspected areas of suspected disability, including assessments for neuropsychological issues, auditory processing, motor coordination, and other communication skills. *See* AR 341-42. In response, the District sent a letter to Plaintiff's parents on August 17, 2017, attaching a proposed assessment plan for Plaintiff. AR 337-40. Attwood responded to the District's letter by email on August 21, 2017, finding the District's proposed assessment plan "largely acceptable" but requesting that Plaintiff receive an IEE for visual processing and other assessment areas not relevant to the instant dispute. *See* AR 342-43.

On August 31, 2017, the District sent Plaintiff a "prior written notice" letter pursuant to 34 C.F.R. § 300.503[3] to address Plaintiff's request for an IEE. *See* AR 310-11. In the letter, the District agreed to allow Plaintiff to receive an IEE for visual processing, provided that the IEE satisfied the IEE policy (the "Policy") for the West End SELPA (the "SELPA"), which is the special education local plan area of which the District is a member. *See* AR 311. The District attached the Policy to the letter for Plaintiff's review, including the SELPA's list of qualified independent evaluators, along with a revised proposed assessment plan for the District's assessment that omitted the areas of assessment for independent evaluation. *See* AR 312-13 (the revised assessment plan); AR 314-36 (the Policy and the SELPA's list of independent evaluators).

The Policy provides that, if a student's requested IEE exceeds the maximum allowable cost for that form of evaluation as set forth in the Policy, the student's parent must demonstrate "unique circumstances" that justify exceeding the cost criteria. AR 321. The cost of the evaluation is considered to include "observations, administration and scoring of tests, report writing, and attendance . . . at the [individualized education plan] team meeting to discuss the findings if invited by the school district." *Id.* The Policy does not identify a single maximum cost for a visual processing evaluation, instead identifying the following three categories of visual-based assessments: (1) Visual Motor Integration, with a maximum cost of $300; (2) Visual

---

[3]    Section 300.503 states that a school district must provide parents with notice "a reasonable time before" the district proposes changes to the educational placement of their child or the provision of a free appropriate public education to the child, or refuses to implement changes requested by the parents. *See* 34 C.F.R. § 300.503(a).

Acuity, with a maximum cost of $350; and (3) Visual Perception, with a maximum cost of $250. AR 323. These cost maximums added up to a cost cap for visual processing evaluations of $900. *See* AR 357 (the ALJ finding this amount to be the relevant cost maximum for a visual processing assessment under the Policy).

### B. Plaintiff Selects a Visual Processing Evaluator

On September 12, 2017, Plaintiff's mother emailed the District, stating that she selected Dr. Douglas Stephey, who was not on the SELPA's list of independent evaluators, as her preferred independent evaluator for visual processing. AR 252. On September 26, 2017, the District requested that Plaintiff's mother provide a copy of Dr. Stephey's curriculum vitae and rate sheet so that the District can determine whether Dr. Stephey satisfied the IEE criteria in the Policy. AR 255.

Dr. Stephey emailed the District directly on October 3, 2017, noting that Plaintiff's parents asked him to forward his curriculum vitae and rate sheet to the District. *See* AR 307. Dr. Stephey explained to the District that "I work collaboratively with about 30 districts and have never had a parent have to track down this information." *Id.* Dr. Stephey attached to his email a rate sheet for Dr. Stephey's vision therapy fees, but the rate sheet did not identify a flat fee for a visual processing evaluation as requested by Plaintiff. *See* AR 307-09. In the email, Dr. Stephey noted that his visual processing evaluation and attendance at an individualized education program ("IEP") meeting for Plaintiff would not exceed a fee of $2,500. AR 307. The ALJ found that, in reviewing Dr. Stephey's rate sheet, the District estimated that Dr. Stephey's visual processing evaluation would cost around $2,400. AR 357.

On October 13, 2017, the District sent a letter to Plaintiff's parents, informing them that Dr. Stephey "does not meet the cost maximum" under the Policy. AR 256. The District requested that Plaintiff's parents provide written justification as to the unique circumstances warranting an assessment above the cost cap in the Policy. *Id.* However, in the letter the District did not identify the specific cost cap for visual processing under the Policy, nor did the District represent the rates Dr. Stephey proposed to charge for such an evaluation. *Id.*

On October 19, 2017, Attwood emailed the District to contest the District's position regarding Dr. Stephey's IEE for visual processing. *See* AR 258. Attwood requested additional information on what the District interpreted to be the Policy's cost cap for visual processing, as well as what Dr. Stephey represented to the District regarding his charged rates. *Id.* In response, the District directed that Attwood contact Royal Lord, the SELPA's program manager, regarding Dr. Stephey's IEE arrangements. *Id.* Attwood took issue with this response, arguing that the District should not require Plaintiff and his representative to "chase around for information when you . . . have demanded a response from us without providing the needed information . . . You could have just responded to my queries, if you wanted to get the job done." AR 259. However, Attwood did not attempt to provide any written justification for exceeding the Policy's cost cap, as requested by the District.

On November 2, 2017, the District sent another letter to Plaintiff's parents, again requesting written justification for Dr. Stephey's evaluation exceeding the Policy's cost cap. AR 280-81. The District followed up with another letter requesting this information on November 7. *See* AR 262.

### C. The Parties File Due Process Complaints

On November 15, 2017, Plaintiff's mother emailed the District, stating her intention to cancel an upcoming IEP meeting because Plaintiff had not yet received all of his IEE assessments. AR 278. Plaintiff's mother repeated that the District has not identified how Dr. Stephey does not satisfy the Policy's cost cap, and Plaintiff's mother asserted that the District's continued efforts to seek written justification as to unique circumstances justifying an IEE in excess of the cost cap "make[s] it clear that you simply do not intend to respond" to Plaintiff's parents' request for an IEE from Dr. Stephey. *Id.*

The District responded the same day by offering that the parties attend an alternative dispute resolution meeting to resolve the parties' "misunderstanding or a difference of opinion on how these matters are to be handled." *Id.* Attwood responded to the District's email by rejecting the District's proposal for a meeting, asserting that "[y]ou don't want to approve IEEs by appropriate independent assessors. You won't even tell us specifically what you have in mind

by a comprehensive visual processing assessment, and how the assessors on your list perform one, and how Stephey's is too expensive." AR 277. Attwood argued that because the District refused to document their specific objections to Dr. Stephey's proposed IEE, the District "needed long ago to file for a hearing to prove [Dr. Stephey] unqualified," and that the District should "[j]ust file for hearing, although you have already unnecessarily delayed in doing it." *Id.*

The ALJ determined that the District was on Thanksgiving break between November 18 and November 26, 2017, and therefore the District did not imminently respond to Attwood's November 15 email. AR 357.

On November 30, 2017, Plaintiff's mother emailed the District in response to a letter from the District dated November 17, 2017. *See* AR 265. The District's letter, which does not appear to be part of the administrative record in this case, purportedly made the same requests as the District's prior letters asking for written justification as to why Dr. Stephey's visual processing IEE should exceed the Policy's cost cap. *Id.* Plaintiff's mother again expressed frustration that the District has refused to answer Plaintiff's questions regarding the Policy's cost cap and Dr. Stephey's charges, and Plaintiff's mother suggested that "[p]erhaps the best thing for the district to do is to file for a hearing to avoid anymore [sic] unnecessary delays." *Id.*

The next day, December 1, the District emailed Plaintiff's mother, stating that "the District will request a due process hearing regarding your request for Dr. Stephey to conduct a vision therapy IEE" but invited Plaintiff's mother to select other assessors that meet the Policy's cost criteria or to schedule an alternative dispute resolution meeting. *Id.* On December 4, 2017, the District sent Plaintiff's parents another letter, informing them that the District conducted an IEP for Plaintiff without their presence in order to adhere to the District's required timelines for conducting IEPs. *See* AR 263. The District again asserted that Dr. Stephey's visual processing IEE did not satisfy the Policy's cost criteria and requested written justification for exceeding the cost cap "as soon as possible." AR 264. Neither Plaintiff's parents nor Attwood responded to the District's correspondence from December 1 and December 4 about Dr. Stephey's IEE.

Interestingly, Plaintiff and the District were able to resolve a disagreement about the cost of a different IEE Plaintiff requested, regarding neuropsychological issues. The District had

represented in the December 1 email that the costs of the neuropsychological IEE to be performed by Plaintiff's selected evaluator, Dr. Robin Morris, exceeded the Policy's cost criteria. *See* AR 265. In the December 4 letter, the District changed course and approved Dr. Morris's IEE. AR 263. In email correspondence that same day, the District explained that Lord, the SELPA's program manager, had contacted Dr. Morris directly, and Dr. Morris agreed to adjust her rate sheet to fit within the Policy's cost criteria. AR 267. When Plaintiff's mother asked if such a solution would be possible for Dr. Stephey as well, the District responded that it would "inquire at our SELPA and if the situation changes, I will contact you." *Id.* However, it is unclear from the record whether the District actually contacted the SELPA about Dr. Stephey, or whether the SELPA reached out to Dr. Stephey as it had done for Dr. Morris.

Nevertheless, on December 5, 2017, the District filed a due process complaint against Plaintiff, which was designated OAH Case No. 2017120261. *See* AR 1-8. In the complaint, the District requested a hearing regarding the issue of whether Plaintiff is entitled to a vision therapy IEE "by an evaluator of [Plaintiff's] choice who does not meet the requirements of the IEE policy." AR 6. In the complaint, the District asserted that the Policy's cost cap for visual perception IEEs was $1,000, and that Dr. Stephey's proposed IEE would cost $1,380 above the cost cap. AR 7.

The ALJ found that Attwood did not know that Dr. Stephey's fee was around $2,400 until reading the District's complaint. AR 358. At the hearing, Attwood opined that such a fee was "high," and Attwood apparently reached out to Dr. Stephey to convince him to lower his fees after the District filed its due process complaint. *Id.* On December 19, 2017, Dr. Stephey emailed Lord and attached a revised fee schedule with a single inclusive fee for a visual processing IEE. *See* AR 274. Dr. Stephey stated that he was told to include time for classroom observations in his initial rate sheet and fee estimate, although he represented that no other districts with which he contracts require classroom observations to be included. *Id.* Recognizing that adding classroom observations to his IEE assessment "would drive up the cost substantially," Dr. Stephey removed that item from his revised fee schedule, which "has reduced the cost substantially." *Id.* Dr. Stephey's revised fee schedule stated that his visual processing

IEE, which included a vision therapy assessment, written report, review of other records for up to one hour, and participation in one IEP meeting via teleconference for up to one hour, would be conducted "for a fee not to exceed $1400.00." AR 275.

On December 26, 2017, Plaintiff filed his own due process complaint against the District, designated OAH Case No. 2017120979. *See* AR 74-78. Plaintiff raised two issues, the first pertaining to whether Plaintiff was denied meaningful assessment prior to August 17, 2017 and the second regarding whether the District unnecessarily delayed in filing its due process complaint about Dr. Stephey's IEE. *See* AR 77-78. On January 2, 2018, OAH consolidated Plaintiff's due process complaint with that of the District. AR 107-08.

### D. The Parties' Efforts to Settle the Due Process Complaints

In Plaintiff's due process complaint, Plaintiff requested a date for mediation between Plaintiff and the District. AR 74. The parties participated in a resolution session on January 30, 2018, and prior to the meeting the parties executed a confidentiality agreement. *See* Rastegar Decl. ¶ 7; *id.* Ex. A. Handwritten on the agreement is the statement that "[n]othing said in this meeting is admissible in any administrative proceeding or civil action." *Id.* Ex. A. Maryam Rastegar, counsel for the District, represents that Attwood added the handwritten terms on behalf of Plaintiff. *Id.* ¶ 7.

Following the resolution session, the parties evidently agreed in principle on terms to resolve their respective due process complaints. On February 1, 2018, Rastegar emailed Plaintiff's mother, stating that "I understand that you are reviewing the settlement agreement [reached at the resolution session] and have a few proposed changes." *Id.* Ex. B. However, Plaintiff's mother emailed Rastegar on February 6, stating that "[w]e spoke to our attorney and she agreed that your offer is outrageous. We will not be signing." *Id.* Ex. C.

On February 8, 2018, Plaintiff retained Tania L. Whiteleather to represent Plaintiff in connection with the administrative proceedings. AR 123. The same day, Plaintiff filed a motion for continuance of the due process hearing then scheduled for February 20, 2018, which the District did not oppose and which the ALJ later granted. *See* AR 125-26; AR 131-32; AR 140-42. Also that same day, Attwood emailed the District and its counsel, stating that "on the advice

of counsel, Tania Whiteleather, we are renewing our offer to settle the District case . . . for $1000 of public funding of the IEE" to be performed by Dr. Stephey. Rastegar Decl. Ex. D.

On February 9, 2018, Rastegar responded to Attwood's email by attaching a copy of the settlement agreement purportedly memorializing the parties' agreement as embodied by Attwood's offer. *See id.* Ex. E. The proposed settlement agreement stated that the agreement "arises out of the resolution session" on January 30, 2018. *Id.* at 2. The agreement provided that the District agreed to reimburse Plaintiff's parents for Dr. Stephey's IEE in an amount not to exceed $1,000, with Plaintiff's parents agreeing to be "solely responsible for any amounts that [Dr. Stephey] might charge that exceeds $1,000." *Id.* at 2-3. In the agreement, each party would agree to dismiss their respective due process complaints with prejudice, and Plaintiff's parents were asked to indemnify the District for "any liability, injury, and/or damage to person or property" resulting from Plaintiff's assessment by Dr. Stephey. *Id.* at 3. Plaintiff's parents also would be providing a release to the District for any claims "arising from, or related to, Parents' right to a publicly-funded vision therapy IEE," in exchange for the District's release to Plaintiff's parents of the same. *Id.* The release was to apply "to any action or proceeding related to claims . . . which are based on any state or federal statute, regulation, [or] case decision," and Plaintiff's parents were to agree that they could not file any complaint of any kind against the District for any claims arising from or related to those resolved by the agreement. *Id.* at 3-4. The agreement would make each party bear their own attorneys' fees and costs. *Id.* at 4.

On February 12, 2018, Whiteleather sent a letter to Rastegar and Jonathan P. Read, also representing the District. *See* Dkt. 28-5. Whiteleather repeated Plaintiff's parents' offer "to pay the amount of Dr. Stephey's visual processing IEE that is over and above $1,000." *Id.* at 1. Whiteleather also asserted that, as a result of the District's failure to accept that offer, the District was obligated to pay a portion of Plaintiff's attorneys' fees charged by Whiteleather in the amount of $1,000 on top of the amount paid for Dr. Stephey's evaluation. *Id.* Whiteleather also stated that other features of the proposed settlement agreement "are not acceptable," including (1) the characterization that the agreement arose out of the resolution session on January 30, (2) the District's attempt to have Plaintiff's parents indemnify the District for Dr. Stephey's

evaluation, and (3) the District's attempt to have Plaintiff release the District from any other claims or actions. *Id.* at 2. Whiteleather additionally stated that the amount the District was willing to pay as the cost cap for Dr. Stephey's evaluation "is not in any way sufficient to pay for the evaluation and attendance at an IEP meeting," suggesting that the District's cost cap should be altered to exclude IEP meeting attendance. *Id.* Whiteleather reasserted that Plaintiff's parents would not agree to waive attorneys' fees as part of any settlement. *Id.*

On February 14, 2018, Read responded to Whiteleather's letter to address Whiteleather's dissatisfaction with the proposed settlement agreement. *See* Dkt. 43-5 Ex. A. Read made the following representations to Whiteleather: (1) the District denied Whiteleather's request to remove the provision that the agreement arose out of the January 30 resolution session; (2) the District denied Whiteleather's request to treat payment for Dr. Stephey's attendance at an IEP meeting separately from the District's cost criteria, because the Policy includes IEP meeting attendance as part of the cost calculation; (3) the District represented that it would agree to make payment for the IEE to Dr. Stephey directly, rather than reimburse Plaintiff's parents for payment, only if Dr. Stephey's evaluation did not exceed the $1,000 cost cap; (4) the District denied Whiteleather's request to remove the indemnification provision; (5) the District agreed to revise the release of claims provision to limit its applicability only to claims "raised" in the administrative complaints at issue; and (6) the District agreed to pay for Plaintiff's attorneys' fees in the amount of $1,000. *Id.* at 3-4. Read attached a revised draft of the settlement agreement reflecting the changes to which the District agreed. *See id.* at 5-9.

The District did not receive a response to Read's February 14 letter. Read Decl. ¶ 5. On March 8, 2018, Read emailed Whiteleather to follow up on the revised settlement agreement. Dkt. 43-5 Ex. B. In response, Whiteleather requested that Read re-send the email containing the proposed settlement agreement. *Id.* Ex. C.

Later that same day, Whiteleather sent an email to Read responding to the District's changes to the settlement agreement, stating that "I had thought a response to the February 14th offer had been sent to your office; my apologies if you did not receive it." *Id.* Ex. D. In the email, Whiteleather made the following requests regarding the District's proposed settlement

agreement: (1) Whiteleather again requested removal of the provision treating the agreement as arising out of the resolution session; (2) Whiteleather stated that Plaintiff's parents "have offered to pay the balance of Dr. Stephey's visual processing assessment beyond the $1,000 that the District has offered for that independent educational evaluation," and Whiteleather argued that the District appeared to be requiring that Dr. Stephey's evaluation be below $1,000 in total, which was unreasonable, rather than simply agreeing to pay up to $1,000 for the evaluation regardless of the total cost billed; (3)Whiteleather represented that Plaintiff's parents "will handle the attendance of Dr. Stephey at an IEP," suggesting that Plaintiff's parents would pay for Dr. Stephey's attendance; (4) Whiteleather stated that "[m]y fees are creeping and are now $2,000 and must be paid" as part of the settlement; (5) Whiteleather again rejected the District's attempt to have Plaintiff's parents indemnify the District for any liability regarding Dr. Stephey's evaluation, as well as the District's attempt to settle issues outside the due process complaints at issue, construing such a request as "an attempt to deny the parents future rights under the law," but Whiteleather conveyed that Plaintiff's parents "might consider" releasing their future rights in exchange for an additional payment of $50,000; and (6) Whiteleather represented that the release of claims provision is "unacceptable as it is overbroad and would preclude the parents from filing to enforce the agreement." *Id.* at 1.

On March 19, 2018, Read sent an email responding to Whiteleather's requests regarding the settlement agreement. *See id.* Ex. E. Read conveyed that the District accepted most of Whiteleather's changes, see *id.* at 1-2, and Read attached a revised proposed settlement agreement adopting those changes, *id.* at 4-8. In the attached agreement, the District would agree to fund Whiteleather's attorneys' fees and costs related to the OAH proceedings in an amount not to exceed $2,000 "within 60 days of District's receipt of reasonable documentation" that supports the services provided, hours billed, and hourly rates. *Id.* at 5. However, the proposed agreement maintained an indemnification provision where Plaintiff's parents agreed to be solely responsible for any liability or injuries resulting from Dr. Stephey's assessment, although the language of the indemnification provision was substantially curtailed from the prior draft. *Id.* Additionally, Plaintiff's parents would still be required to release and discharge the District for

1  all past and present claims "arising from, or related to" the OAH proceedings, and Plaintiff's

2  parents would have to agree not to file any complaint against the District for such claims. *Id.* at

3  5-6.

4      After receiving no response from Whiteleather, Read sent another email on March 22,

5  2018 inquiring as to whether Whiteleather received the latest draft of the settlement agreement.

6  *Id.* Ex. F. Whiteleather ultimately responded on March 23 with a marked-up version of Read's

7  proposed settlement. *Id.* Ex. G. Inexplicably, and despite Whiteleather's prior representations

8  about the willingness of Plaintiff's parents to pay all costs for Dr. Stephey's IEE above $1,000,

9  Whiteleather altered the proposed settlement agreement so that the District would agree to fund

10 the IEE "in an amount not to exceed $1,400, consistent with the West End SELPA's IEE policy."

11 *Id.* at 2. Whiteleather also crossed out the provision in the agreement that would hold Plaintiff's

12 parents responsible to pay all charges associated with the IEE exceeding $1,000. *See id.* at 3.

13 Furthermore, Whiteleather increased the attorneys' fees to be paid by the District from $2,000 to

14 $3,000, also changing the requirement for her to provide "reasonable documentation" to one

15 requiring only "redacted" documentation. *Id.* Whiteleather again took issue with the

16 indemnification provision, crossing out that provision and writing below "THIS IS NOT

17 ACCEPTABLE; DR STEPHEY HAS INSURANCE, AND THE PARENTS WILL NOT HOLD

18 HARMLESS THE DISTRICT FROM SOMEONE ELSE'S ERRORS." *Id.* Whiteleather also

19 amended the release of claims provision by striking the language releasing the District from "all

20 past and present claims, damages, liabilities, rights, and complaints arising from, or related to"

21 the OAH proceedings so that the only claims being released by Plaintiff's parents would be the

22 very claims raised in the OAH proceedings themselves. *See id.* at 3-4.

23      On March 27, 2018, Read emailed Whiteleather to respond to her proposed changes to

24 the draft settlement agreement. *Id.* Ex. H. Read rejected Whiteleather's attempt to increase

25 payment for Dr. Stephey's IEE to $1,400, returning to the previously-agreed amount of $1,000.

26 *Id.* at 2. For the first time, Read agreed to remove the indemnification provision entirely,

27 acknowledging that the District no longer sought to have Plaintiff's parents be solely responsible

28 for any injury resulting from Dr. Stephey's IEE. *Id.* at 1. Read agreed to allow redacted billing

records as sufficient to satisfy "reasonable documentation" for purposes of paying Whiteleather's attorneys' fees, but Read noted that he "did not change the amount of [attorneys'] fees because the District agreed to your demand of March 8 [for $2,000]." *Id.* Lastly, Read agreed to "narrow the release [provision] to claims 'raised' in each [OAH] complaint," rather than providing for a release of all claims "arising from or related to" the OAH proceedings. *Id.* Read attached a proposed settlement agreement reflecting these changes. *See id.* at 2-6; *see also* Dkt. 28-6.

Whiteleather's next correspondence regarding the settlement agreement came on April 3, 2018. Dkt. 43-5 Ex. I. Whiteleather requested four small textual changes to the settlement agreement, as well as an increase in the District's payment of attorneys' fees to $5,000. *Id.* Whiteleather did not convey dissatisfaction with the release provision included in Read's latest draft, nor with other language regarding waivers of rights still remaining in the proposed agreement. Read responded two days later, on April 5, incorporating some of Whiteleather's proposed textual changes and agreeing to increase the attorneys' fees from $2,000 to $2,500, half of Whiteleather's latest request. *Id.* Ex. J; *see also* Dkt. 28-7.

On April 10, 2018, Whiteleather again emailed Read to dispute terms included in the proposed settlement agreement. Dkt. 43-5 Ex. K. Whiteleather stated that Read's draft from April 5 "fails to address the original changes we had requested for this matter nor the most vital of our objections to your client's offer." *Id.* Whiteleather elaborated that her objections to Read's draft from March 19 "continue and apply to the April 5, 2018 offer which demands waiver of other rights beyond those not at issue and which fails to offer or include reasonable attorney's fees." *Id.* Whiteleather conveyed that Plaintiff's parents "simply cannot accept this latest offer, which contains the same outrageous waiver language the parents objected to in multiple communications," *id.*, although Whiteleather did not identify what objectionable language was still at issue in Read's latest draft. Because Whiteleather construed Plaintiff's parents' offer to pay for all costs of Dr. Stephey's IEE exceeding $1,000 as "a clear agreement by the parents to the District's cost cap," Whiteleather requested a revised version of a settlement agreement "that addresses the sole issue being resolved – that of the payment of the visual processing IEE, which

does not require the parent to waive other issues, and which provides for the payment of reasonable attorney's fees and costs." *Id.*

Read responded to Whiteleather's proposal on April 18, 2018. *Id.* Ex. L. Read represented that he "edited the waiver language to specifically cite the issues in this matter," as Whiteleather had requested. *Id.* at 1. The new release of claims provision stated that Plaintiff's parents release and discharge the District from all claims and liabilities raised in Plaintiff's due process complaint "related to whether District failed to timely assess [Plaintiff] following Parents' request for assessments in April 2017, whether District failed to fund Parents' request for a vision therapy IEE or file for due process to defend its IEE criteria, and related to [Plaintiff's] right to a vision therapy IEE." *Id.* at 3-4. Read also stated that he received authorization from the District to increase payment of attorneys' fees from $2,500 to $3,000, which was reflected in the new proposed settlement agreement. *Id.* at 1, 3; *see also* Dkt. 28-8.

In the midst of the parties' negotiation efforts, on April 2, 2018 Plaintiff sought a continuance of the OAH proceedings in light of scheduling conflicts for Whiteleather. *See* AR 180-82 (request for a continuance of the due process hearing set for April 3-5, 2018); AR 191-92 (the ALJ granting Plaintiff's request for a continuance and setting the hearing to begin on April 10); AR 194-95 (the ALJ granting the parties' joint request for a continuance and setting the hearing to begin on May 2).

**E.     The District Agrees to Fund the IEE and Withdraw Its Complaint**

On March 21, 2018, while the parties were attempting to negotiate a settlement of their respective due process complaints, Dr. Stephey evaluated Plaintiff for visual processing, thus completing the IEE. *See* AR 268 ("Vision Assessment Invoice" from Dr. Stephey identifying the date of evaluation as March 21, 2018). Dr. Stephey evidently charged only $800 for the assessment of Plaintiff, including the preparation of a written report and review of Plaintiff's records. *Id.* Dr. Stephey noted that, due to Plaintiff's condition, "there were a number of assessments that I simply could not conduct as his current skill set won't allow him to," and Dr. Stephey proceeded to list the assessments he could not perform. *Id.*

It is unclear from the record when Plaintiff, Plaintiff's parents, and/or Whiteleather first received the invoice from Dr. Stephey for the visual processing IEE. However, neither Whiteleather nor Plaintiff's parents brought Dr. Stephey's invoice to the District's attention as part of the parties' ongoing efforts to communicate a settlement of their respective due process complaints. Instead, what the record does reveal is that Plaintiff included Dr. Stephey's invoice in Plaintiff's evidence binder provided to the District on March 28, 2018 in advance of the OAH hearing, which the ALJ found to be the first time the District became aware that Dr. Stephey's IEE fell within the Policy's cost cap and satisfied the District's cost critera. *See* AR 358-59 (the ALJ finding persuasive the District's representation that "the first time [Plaintiff] communicated that the one thousand dollars was acceptable was when District received [Dr.] Stephey's invoice when the parties exchanged exhibit binders for the hearing, on March 28, 2018").

On April 23, 2018, Read emailed Whiteleather to discuss ongoing disputes regarding the settlement agreement. *See* Dkt. 43-5 Ex. M. In the email, Read stated that "[i]n reviewing your evidence binder . . . it appears that Dr. Stephey has already completed the [vision therapy] evaluation for a cost of $800, which is below the District's cost cap. We did not have that information from Dr. Stephey previously." *Id.* Read requested that Whiteleather confirm whether Plaintiff's parents still sought a direct funding of the IEE—*i.e.*, to have the District pay Dr. Stephey directly for the IEE—or whether Plaintiff's parents now sought reimbursement of the $800 in the event that Plaintiff's parents already paid Dr. Stephey for the evaluation. *Id.*

Whiteleather responded to Read's email the same day. *Id.* Ex. N. Whiteleather asserted that Plaintiff's parents "have agreed, several times, to accept the District's cost cap of $1,000 for Dr. Stephey's visual processing assessment. Your client's additional waiver terms are not acceptable, and the parents need to be paid for the attorney's fees they have incurred." *Id.* at 1. Whiteleather requested that Read inform her whether the District "wants to end this appropriately" by settling the matter before hearing, which would include the payment of Whiteleather's attorneys' fees. *Id.*

On April 24, 2018, Read sent Whiteleather an email regarding the new information about Dr. Stephey completing the IEE for below the Policy's cost cap. AR 346. Read stated that, prior

to receipt of Dr. Stephey's invoice, "the District understood that [Plaintiff's] parents were requesting that the District directly fund an independent vision therapy evaluation by Dr. Stephey in the amount of $1,400." *Id.* However, the last time Whiteleather had requested more than $1,000 as payment for the IEE was on March 23, 2018, when Whiteleather marked up the draft settlement agreement to provide for a payment of $1,400 for Dr. Stephey's evaluation, see Dkt. 43-5 Ex. G, and multiple settlement communications since that date reveal that Plaintiff's parents were willing to agree that the District would pay a maximum of $1,000 for Dr. Stephey's evaluation. Nevertheless, Read continued that, based on the new information about Dr. Stephey's invoice, "the District will agree to fund the IEE by Dr. Stephey in the amount of $800." AR 346. Read noted that the District intended to withdraw its due process complaint and requested that Whiteleather answer whether the payment for Dr. Stephey's IEE should be made to Dr. Stephey directly or to Plaintiff's parents for reimbursement. *Id.*

On April 25, 2018, Whiteleather responded to Read's email by stating that Plaintiff's parents would accept $1,000 for Dr. Stephey's IEE as the cost cap under the Policy, "no less." Dkt. 28-10. Whiteleather asserted that the remaining $200 available under the Policy "will be applied to Dr. Stephey's appearance at the necessary IEP." *Id.* Whiteleather represented that her fees incurred in representing Plaintiff's parents have risen to almost $9,750[4] but that Whiteleather would accept $7,750 if the District provided a "simple settlement agreement." *Id.* Whiteleather stated that her offer was available for that day only. *Id.* Ultimately, on April 25, 2018, the District filed a notice in the OAH proceedings withdrawing its due process complaint without prejudice. *See* AR 197.

Whiteleather sent another response to Read's email on April 26, 2018, stating that "any offer to settle [the outstanding due process complaints] includes reasonable attorney's fees." AR 350. Whiteleather indicated that she would be willing to accept $7,750 in attorneys' fees "as full satisfaction of my now over $10,000 fee bill." *Id.* Whiteleather also acknowledged Read's email as confirming that the District "has now agreed to pay that $1,000" as the cost cap for Dr.

---

[4] Whiteleather's email actually stated that her fees were now "$9,7500," although that number appears to be a typo.

Stephey's IEE under the Policy. *Id.* That same day, Plaintiff filed a notice in the OAH proceedings withdrawing the first of two issues Plaintiff raised in the due process complaint regarding whether Plaintiff was denied meaningful assessment prior to August 17, 2017. *See* AR 200. Therefore, at this point in time, all that remained in the OAH proceedings was Plaintiff's due process complaint alleging that the District did not fund Dr. Stephey's IEE or file a due process complaint without unnecessary delay.

Over the following days, subsequent correspondence confirmed that Plaintiff's parents were seeking reimbursement of the $800 cost of Dr. Stephey's evaluation, rather than payment directly to Dr. Stephey. *See* AR 353. Whiteleather also noted that the remaining $200 under the District's cost cap was to be billed to the District following Dr. Stephey's attendance at an IEP meeting to discuss the results of Dr. Stephey's IEE. AR 352.

On April 30, 2018, Plaintiff filed another motion to continue the due process hearing from May 2, 2018 due to a scheduling conflict for Whiteleather. AR 204-06. The District opposed Plaintiff's request for a continuance as untimely, AR 213, and the ALJ ultimately denied Plaintiff's motion, AR 216-17. The hearing proceeded as scheduled on May 2, 2018. *See* AR 395 (the first page of the transcript for the May 2 hearing).

At the hearing on May 2, the ALJ did not allow Whiteleather to introduce into evidence certain settlement communications, including drafts of the settlement agreement, between Whiteleather and counsel for the District. *See* AR 577-78. Thus, the administrative record did not contain most of the settlement correspondence between Whiteleather and the District's counsel over the period of time between February 2018 and April 2018.

**F.      The ALJ's Decision**

Following the May 2 hearing, on June 14, 2018, ALJ Sabrina Kong issued a decision denying Plaintiff's due process complaint. *See* AR 355-67.

First, the ALJ made several evidentiary rulings, finding that Plaintiff's characterization of the evidence of communications between Plaintiff and the District during the pendency of the administrative proceedings was less persuasive than the District's characterization of the same evidence. The ALJ determined that Attwood's assertion that Plaintiff and his parents

communicated to the District in mid-February 2018 that Plaintiff was willing to accept only $1,000 for the IEE from Dr. Stephey was "not persuasive," because Plaintiff did not provide any documents to support that contention. AR 358-59. The ALJ also found Attwood's argument that the District never offered to pay $1,000 for Dr. Stephey's evaluation without conditions, such as waivers of Plaintiff's claims or other rights, to be unpersuasive in light of the emails from late April 2018 indicating that the District was withdrawing its due process complaint and would fund Dr. Stephey's evaluation at the $1,000 cost cap. AR 359.

Second, the ALJ concluded that the District did not unnecessarily delay in filing its due process complaint between August 21, 2017 and December 5, 2017. AR 363-64. The ALJ found that the District timely agreed to fund an IEE within 10 days of Plaintiff's initial request, and when Plaintiff selected an evaluator who did not meet the District's cost criteria, the District "actively communicated with Parent and Mr. Attwood about the [] cost criteria and provided Mr. Attwood and Parent the opportunity to demonstrate any unique circumstances justifying an independent evaluation that did not fall within the [] cost criteria." AR 363. Because Plaintiff never offered a justification warranting the District to pay for an IEE in excess of the cost cap and instead suggested "unequivocally" that the District file for due process in November 2017, the ALJ held that the District's filing of a due process complaint on December 5, 2017 was reasonable in light of the District being closed over the Thanksgiving holiday. AR 364.

Third, as to the period between December 6, 2017 and April 25, 2018, the ALJ construed the parties' frequent communications from February 2018 (when Plaintiff retained an attorney) and late April 2018 as "negotiat[ing] a settlement of the consolidated matter"—*i.e.*, both the District's due process complaint and Plaintiff's due process complaints against the District. *Id.* The ALJ again rejected Plaintiff's argument that in February 2018 he communicated to the District a willingness to accept only $1,000 for Dr. Stephey's evaluation, because Plaintiff "never provided any documents, emails or otherwise, supporting that he accepted the [] cost criteria before late April 2018." *Id.* The ALJ continued that, even if Plaintiff had made such an offer in February 2018, such an offer was "irrelevant" because Plaintiff never provided any evidence that a delay between February and April 2018 impeded Plaintiff's educational rights,

deprived Plaintiff of educational benefits, or significantly impeded the ability of Plaintiff's

parents to participate in the decision-making process, showings which are necessary for Plaintiff

to be successful in his due process complaint. *See* AR 365 (citing 20 U.S.C. § 1415(f)(3)(E)(ii)

and Cal. Educ. Code § 56505(f)(2) for the proposition that "a procedural violation does not

automatically require a finding that a [free appropriate public education] was denied"). The ALJ

noted that it was Plaintiff, not the District, who sought numerous continuances of the OAH

hearing before the ALJ, and that Plaintiff did not provide any evidence showing that the delays

in resolution of the administrative proceeds "were anything beyond the normal and brief periods

to accommodate good faith discussions, negotiations, including resolution session and

mediation." *Id.*

The ALJ also found that Plaintiff "conflated District's duty to file and maintain its case to

decision with resolving [Plaintiff's] complaint in the context of a settlement agreement which

included paying [Plaintiff's] attorneys' fees without releases." *Id.* Importantly, the ALJ noted

that Plaintiff "did not present evidence supporting that District was required to offer the [IEE] in

the context of a formal settlement agreement along with payment of [Plaintiff's] attorney's fees

when agreeing to fund an independent evaluation." *Id.* Indeed, the ALJ recognized that after the

District withdrew its due process complaint on April 25, 2018, "[Plaintiff's] only dispute with

District was its refusal to pay him attorneys' fees." *Id.* But ultimately, the ALJ held that

"[w]hether District was required to pay for [Plaintiffs'] attorneys' fees in conjunction with

funding the [IEE] is not before this ALJ, and beyond the scope of the issue in this hearing." *Id.*

Accordingly, based on the administrative record, the ALJ concluded that Plaintiff did not

meet his burden to prove by a preponderance of the evidence that the District unnecessarily

delayed in filing its due process complaint or was unreasonable in its efforts to continue

negotiating with Plaintiff's team up until the time that the parties agreed on the amount to be

paid for the IEE performed by Dr. Stephey. AR 365-66. The ALJ found the District to be the

prevailing party as to the sole issue remaining in Plaintiff's due process complaint. AR 366.

## G.    Procedural History

Plaintiff filed the Complaint in this action on July 18, 2018, seeking a review and reversal of the ALJ's decision denying Plaintiff's due process complaint, including a court order requiring that the District pay Plaintiff for all reasonable attorneys' fees incurred in connection with the OAH proceedings and this action. *See* Dkt. 1.

On February 22, 2019, the Court granted Plaintiff's motion to supplement the administrative record with some correspondence between Whiteleather and counsel for the District regarding settlement negotiations, including draft settlement agreements. *See* Dkt. 41. The Court held that the ALJ improperly found those communications to be inadmissible, and the Court determined that those communications were relevant to the issue, addressed by the ALJ in the decision, of whether the District unreasonably delayed in resolving Plaintiff's due process complaint by refusing to settle for the District's cost cap until April 2018. *Id.* at 2. However, the Court denied Plaintiff's request to supplement the administrative record with communications between Plaintiff's mother and the District after the conclusion of the administrative hearings, because such evidence is not relevant to the issues for the Court's resolution as part of the review of the administrative record. *Id.*

On March 19, 2019, the Court granted the District's ex parte application to supplement the administrative record with additional settlement communications between Whiteleather and the District's counsel. *See* Dkt. 44.

After the parties submitted trial briefs in this action, the Court held a pretrial conference on March 25, 2019 in advance of a bench trial scheduled for April 2, 2019. *See* Dkt. 49. Following the pretrial conference, the Court continued the bench trial date to April 16, 2019 and requested supplemental briefing from the parties, to give Plaintiff a chance to address the District's supplemental evidence entered into the record. *See* Dkt. 50. The Court also explained the lack of clarity as to what legal standards should apply to the thrust of Plaintiff's argument in this case, that the District unnecessarily delayed in resolving its due process complaint by failing to agree to the cost cap of $1,000 for Dr. Stephey's IEE after Plaintiff first indicated his willingness to agree to the cost cap in February 2018. *Id.* at 1-2.

After the parties submitted their supplemental briefs, the Court vacated the bench trial and took the case under submission without holding a hearing. *See* Dkt. 55.

**III.    Conclusions of Law**

**A.    Standards of Review**

The IDEA provides that any party aggrieved by the findings of an ALJ in response to a due process hearing may bring a civil action in federal court to challenge the administrative decision. 20 U.S.C. § 1415(i)(2)(A). In adjudicating the action, the district court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and "shall grant such relief as the court determines is appropriate," basing the decision on the preponderance of the evidence. *Id.* § 1415(i)(2)(C). The party challenging the administrative decision has the burden of persuasion, *i.e.*, to establish by a preponderance of the evidence that the ALJ erred in its decision. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009) (*L.M. v. Capistrano*) (citation omitted).

Because the district court may hear evidence outside the administrative record, "judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are . . . held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-72 (9th Cir. 1993) (citations omitted). However, "complete *de novo* review is inappropriate." *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008) (internal quotation marks and citation omitted). Instead, it is up to the district court to determine how much deference to give to state educational agencies, including administrative bodies tasked with adjudicating due process claims under the IDEA, based on the particular circumstances of the case. *See J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010) (quoting *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987)).

Nevertheless, the court still must give "due weight" to state administrative proceedings and cannot substitute its own considerations of education policy in place of those held by the school authorities whose actions are under review. *Ojai*, 4 F.3d at 1472 (internal quotation marks and citation omitted); *see also Amanda J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887-88 (9th Cir. 2001) (noting that courts must defer to the "specialized knowledge and experience" of state

administrative bodies tasked with the responsibility over the educational rights of individual children) (internal quotation marks and citation omitted). Courts also are directed to give "particular deference to 'thorough and careful' administrative findings." *Douglas Cty.*, 552 F.3d at 793 (quoting *R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007)). This is because a state administrative hearing regarding special education determinations are "fact-intensive [in] nature," which "render[s] a more deferential approach appropriate" in light of considerations of judicial economy. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104 n. 4 (9th Cir. 2007); *see also Ojai*, 4 F.3d at 1476 (noting that an ALJ's decision and administrative findings "evince[] his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented").

Here, the ALJ held an administrative hearing and heard live testimony from several witnesses, ultimately issuing a relatively short, but concise, 12-page decision addressing Plaintiff's lone surviving due process claim against the District. The ALJ's analysis in the decision appears to satisfy the threshold for "thorough and careful" administrative findings, and the Court will review the ALJ's decision with some deference. *See, e.g., A.A. v. Goleta Union Sch. Dist.*, No. CV 15-06009 DDP (MRWx), 2017 WL 700082, at *2 (C.D. Cal. Feb. 22, 2017) (reviewing the ALJ's decision with "substantial deference" because of "the length of the administrative hearing, which included live testimony from multiple witnesses, and the thoroughness of the ALJ's analysis"); *Cupertino Union Sch. Dist. v. K.A.*, 75 F. Supp. 3d 1088, 1098 (N.D. Cal. 2014) (noting that " [a] court should give particular deference where the hearing officer's administrative findings are thorough and careful or are based on credibility determinations of live witnesses") (internal quotation marks and citations omitted); *but see Abdella v. Folsom Cordova Unified Sch. Dist.*, No. 2:14-cv-1259 KJM AC PS (TEMP), 2016 WL 3364793, at *3 n. 5 (E.D. Cal. June 17, 2016) (giving "significant weight" to the ALJ's 54-page decision which "thoroughly and correctly details the relevant history, evidence and issues in dispute, with proper legal analysis supported by citations to case law and statutes") (internal quotation marks and citation omitted).

On the other hand, during the pendency of this action, the Court granted each party's respective motion to supplement the administrative record, because the ALJ improperly did not admit into evidence certain communications between Whiteleather and counsel for the District between February and April, 2018. *See* Dkts. 41, 44. Therefore, the Court will not defer to any findings by the ALJ that are directly contradicted by the supplemental evidence offered by the parties.

**B.    Analysis**

Federal regulations promulgated under the IDEA provide that the parents of a school-aged child enrolled in public school has the right to obtain an IEE at public expense if the parents disagree with the public agency's own evaluation of the student's educational needs. 34 C.F.R. § 300.502(b)(1). When a parent requests an IEE, the public agency

> must, without unnecessary delay, either—
>
> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
>
> (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing . . . that the evaluation obtained by the parent did not meet agency criteria.

*Id.* § 300.502(b)(2); *see also* 20 U.S.C. § 1415(b)(1).[5]

The term "unnecessary delay" is not defined in the regulations or elsewhere. Nevertheless, the Office of Special Education Programs ("OSEP"), the entity within the Department of Education responsible for promulgating regulations under the IDEA, addressed the meaning of the phrase in an advisory comment letter. *See Letter to Anonymous*, 56 IDELR 175 (OSEP 2010).[6] In the letter, OSEP explained that the term "unnecessary delay" allows for "a reasonably flexible, though normally brief, period of time that could accommodate good faith

---

[5]     California law also provides parents with the opportunity to obtain an IEE at public expense, in accordance with § 300.502, while allowing the public agency to initiate a due process hearing to defend its prior assessment as appropriate. *See* Cal. Educ. Code §§ 56329(b), (c).

[6]     The Court GRANTS the District's request for judicial notice, Dkt. 40, and takes judicial notice of the OSEP advisory letters attached to the District's request which are cited in this Order. OSEP's advisory letters are publicly available and not subject to reasonable dispute, and Plaintiff has not challenged the authenticity of the letters attached to the District's request. *See* Fed. R. Evid. 201. For all documents in the District's request for judicial notice not cited in this Order, the Court finds those documents to be irrelevant or unnecessary to the issues

discussions and negotiations between the parties over the need for, and arrangements for, an

IEE." *Id.* at 3;[7] *see also J.P. v. Ripon Unified Sch. Dist.*, No. 2:07–cv–02084–MCE–DAD, 2009

WL 1034993, at *7 (E.D. Cal. Apr. 15, 2009) (concluding that the date of a request for an IEE

was not the date at which the clock began to tick regarding the school district's delay in filing a

due process complaint because "the parties continued to discuss provision of an IEE through a

series of letters" following the parents' request and "the parties did not come to a final impasse

until . . . less than three weeks before the [d]istrict's due process report was filed"). Ultimately,

the determination of whether a public agency's delay in filing a due process complaint or

funding the IEE was "unnecessary" is a "fact-specific inquiry," foreclosing the existence of a

strict deadline by which the public agency must respond to satisfy its duties under

§ 300.502(b)(2). *See C.W. v. Capistrano Unified Sch. Dist.*, 784 F.3d 1237, 1247 (9th Cir. 2015)

(*C.W. v. Capistrano*) (citing *Ripon*, 2009 WL 1034993, at *7–8).

      A finding that a public agency failed to "fund or file" without unnecessary delay does not

automatically necessitate a ruling in favor of the parents on their due process complaint.

Administrative hearing officers are directed under the IDEA to make their decisions "on

substantive grounds based on a determination of whether the child received a free appropriate

public education," commonly referred to as a "FAPE." 20 U.S.C. § 1415(f)(3)(E)(i); *see also id.*

§ 1415(a) (noting that state procedural safeguards adopted under the IDEA must "ensure that

children with disabilities and their parents are guaranteed procedural safeguards with respect to

the provision of a free appropriate public education by such agencies"). However, procedural

violations of the IDEA's implementing regulations "do not always amount to the denial of a

FAPE." *L.M. v. Capistrano*, 556 F.3d at 909 (citations omitted); *see also id.* at 910 (noting that

---

to be decided, and therefore the Court DENIES as moot the District's request to take judicial notice of those documents.

[7]    In *Letter to Anonymous*, OSEP noted that its advisory letter "is provided as informal guidance and is not legally binding, but represents an interpretation by the U.S. Department of Education of the IDEA in the context of specific facts presented." 56 IDELR 175, at 4. Indeed, as one district court noted, advisory letters from OSEP are "in the nature of an advisory opinion" and constitute "an 'interpretive rule' that does not have the 'force and effect of law' that accompanies an agency's substantive rules developed pursuant to statutory authority." *William S. Hart Union High Sch. Dist. v. Romero*, No. CV-13-3382-MWF (PLAx), 2014 WL 12493766, at *4 (C.D. Cal. Apr. 9, 2014) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)). Thus, such interpretive rules "are given

"a procedural violation may be harmless"). Once a procedural violation is identified, the ALJ "must determine whether that [procedural] violation affected the substantive rights of the parent or child." *Id.* at 909 (citations omitted). As stated in the IDEA, a procedural violation of the IDEA and its implementing regulations amounts to the denial of a FAPE "only if the procedural inadequacies—(I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *see also L.M. v. Capistrano*, 556 F.3d at 909; *Amanda J.*, 267 F.3d at 892.

In the underlying state administrative proceedings, the ALJ analyzed two distinct time periods regarding Plaintiff's due process complaint alleging that the District unnecessarily delayed in funding Dr. Stephey's IEE or filing its due process complaint. First, the ALJ assessed the period between August 21, 2017 and December 5, 2017, leading up to the date the District filed its due process complaint. *See* AR 363-64. Second, the ALJ analyzed whether the District timely pursued its due process complaint between the date of filing the complaint and April 25, 2018, the date the District withdrew its complaint and dismissed it without prejudice. *See* AR 364-65. The Court will proceed to analyze each of these time periods to determine whether the ALJ's findings should be upheld in light of the applicable standards of review set forth above.

       1.    *Prior to the Filing of the District's Due Process Complaint on December 5, 2017*

The ALJ held that the District did not unnecessarily delay between the first time that Plaintiff's parents requested an IEE for visual processing in August 2017 and the date that the District filed its due process complaint on December 5, 2017. AR 363. The ALJ determined that the District "timely agreed to fund an independent visual processing evaluation, within 10 days of [Plaintiff's] request" on August 21, 2017, and that the District "actively communicated" with

---

reduced prudential authority," and "[a]lthough courts may find the agency's interpretation persuasive and adopt it, the final power of interpretation lies in the courts." *Id.* (citing *Chrysler*, 441 U.S. at 303).

Plaintiff's parents and Attwood once the District discovered that Dr. Stephey's IEE would not satisfy the Policy's cost cap. *Id.* Plaintiff's parents did not provide written justification for the District to exceed the cost cap regarding Dr. Stephey's IEE, and the ALJ found that Plaintiff did not present any evidence during the administrative proceedings showing that the cost cap was unreasonable. *Id.*

The ALJ concluded that the "first indication of impasse" between the parties regarding Dr. Stephey's IEE was on November 15, 2017, when Attwood suggested that the District file for due process. AR 364; *see also* AR 277. Because the District was on Thanksgiving holiday between November 18-26, the ALJ held that the District's decision to file a due process complaint on December 5—20 days after Attwood's first suggestion to file for due process—was reasonable, particularly because the District continued to communicate with Plaintiff's parents during this time "in a last-ditch effort to resolve the matter without having to file" a due process complaint. AR 364. In reaching this conclusion, the ALJ distinguished *Pajaro Valley Unified Sch. Dist. v. J.S.*, No. C 06-0380 PVT, 2006 WL 3734289 (N.D. Cal. Dec. 15, 2006), a case heavily relied upon by Plaintiff where the court found a delay of three months to be unnecessary delay, because the 20-day delay by the District was a "brief period" in comparison and was justified based on the parties' continuing communications to resolve the IEE dispute. *See* AR 364. Instead, the ALJ analogized to *Ripon*, where the school district delayed filing a due process complaint by three weeks due to continued efforts to communicate with the parents to resolve the matter before filing. *Id.*; *see Ripon*, 2009 WL 1034993, at *7-8 (finding no unnecessary delay because "the parties continued to discuss provision of an IEE through a series of letters" and "did not come to a final impasse in that regard until . . . less than three weeks before the District's due process report was filed").

       i.   *The District's Withholding of Pertinent Information Can Constitute "Unnecessary Delay" Under § 300.502(b)(2)*

Plaintiff takes issue with the District's failure to identify the total cost cap for a visual processing IEE under the Policy, or what amount Dr. Stephey indicated to the District that he would charge for Plaintiff's visual processing IEE, upon requests by Plaintiff's parents beginning

in October 2017. *See* AR 258-59; Dkt. 42 at 5-6 (Plaintiff's reply trial brief arguing that "the parents and the advocate could not discuss or negotiate the costs the District believed Dr. Stephey charged because the parents didn't even know what that was or how much Dr. Stephey's purported charge exceeded the District's cost criterion"). The ALJ did not address this specific argument in its decision, and Plaintiff has not identified any authority for the proposition that the District was required to identify any particular information for Plaintiff's parents upon request. Nevertheless, Plaintiff's argument holds merit.

Because the inquiry into whether unnecessary delay existed is a fact-intensive inquiry, *see C.W. v. Capistrano*, 784 F.3d at 1247, it is necessary to consider all of the circumstances surrounding the parties' ongoing communications in an effort to resolve the IEE dispute. The case law cited in this Order does not suggest that the existence of merely *any* communications between parents and a school district regarding the provision of an IEE automatically tolls the clock for the district's obligation to fund or file without unnecessary delay. The Court is persuaded by OSEP's characterization of the term "unnecessary delay" as allowing for "a reasonably flexible" period of time to "accommodate *good faith* discussions and negotiations" regarding the requested IEE. *See Letter to Anonymous*, 56 IDELR 175 (OSEP 2010) (emphasis added). Thus, if a school district communicates with parents about an IEE in a manner that suggests bad faith or dilatory tactics, rather than a good faith attempt to resolve the dispute over the IEE amicably, there is no reason why those communications should be afforded the same weight when evaluating the reasonableness of the district's conduct and the justification for its delay in filing for due process at an earlier date. In other words, a district's unreasonable actions during attempts to resolve a dispute with parents regarding an IEE, including the withholding of pertinent information necessary for the parents to defend their position, could fairly amount to "unnecessary delay" under the particular circumstances of a given case.

In this case, the District had information available to it that would have assisted Attwood and Plaintiff's parents in assessing how to respond to the District's October 13, 2017 letter asserting that Dr. Stephey did not meet the "cost maximum" under the Policy. *See* AR 256. That letter was purportedly issued to satisfy the District's obligations to send Plaintiff's parents a

"prior written notice" letter pursuant to 34 C.F.R. § 300.503, which requires the District to include "an explanation of why the [District] proposes or refuses to take the action" requested by the parents. 34 C.F.R. § 300.503(b)(2). In the letter, the District requested written justification of the unique circumstances warranting a departure from the Policy's criteria for Dr. Stephey's evaluation, but the District did not explain what the cost maximum under the Policy was, nor how much Dr. Stephey's evaluation would exceed that maximum.

That missing information is obviously vital to the discussions between the District and Plaintiff's parents that would inevitably follow after the District's October 13 letter. To illustrate, had Dr. Stephey charged one dollar over the Policy's cost maximum for a visual processing IEE, Plaintiff's burden to justify the use of Dr. Stephey would have been substantially diminished, and Plaintiff's parents almost assuredly would have offered to pay the excess immediately, without the need for the District to resort to a due process hearing. And the events that transpired following the District's filing for due process further illuminates the repercussions of depriving Plaintiff's parents of this information in a timely manner. As the ALJ found, Attwood did not know that Dr. Stephey's purported fee from the rate sheet sent to the District would be around $2,400 until after the District identified that amount in its due process complaint. *See* AR 358. Attwood then promptly "convinced [Dr.] Stephey to assess [Plaintiff] for one thousand four hundred dollars," *id.*, thereby substantially reducing the difference between Dr. Stephey's rates and the District's cost cap. Plaintiff's parents ultimately express their willingness to pay the amount of Dr. Stephey's fees in excess of $1,000, an option of which Plaintiff's parents were entirely deprived before the District filed for due process on December 5, 2017 due to the District's unwillingness to share even the most basic information about how Dr. Stephey's rates did not comply with the District's cost cap.

The District argues that "[t]here is no legal authority that requires a district to provide a sufficient break-down of a particular independent assessor's costs in order to facilitate" negotiation between the district and parents requesting an IEE. Dkt. 39 at 16. The District is incorrect; the IDEA "obligates public agencies rather than parents or students to ensure compliance with the procedural safeguards." *William S. Hart Union High Sch. Dist. v. Romero*,

No. CV-13-3382-MWF (PLAx), 2014 WL 12493766, at *5 (C.D. Cal. Apr. 9, 2014); *see also* 20 U.S.C. § 1400(d)(1)(B) (setting forth one of the purposes of the IDEA as "to ensure that the rights of children with disabilities and parents of such children are protected"); *id.* § 1415(a) (requiring states to establish procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education"); *Amanda J.*, 267 F.3d at 891-92 (discussing the purposes of the IDEA's procedural safeguards to protect a student's right to a FAPE and noting that "those procedures which provide for meaningful parent participation are particularly important"). Thus, the District—not Plaintiff's parents—was required under the IDEA to ensure that it was both (1) acting without "unnecessary delay" in response to Plaintiff's parents' request for a visual processing IEE, and (2) communicating with Plaintiff's parents in good faith when attempting to resolve the dispute over Dr. Stephey's IEE. While no specific statute or regulation requires the District to itemize a particular evaluator's potential fees, the District is obligated to provide an explanation of why the District rejects a requested IEE. *See* 34 C.F.R. § 300.503(b)(2); *see also* *i.d.* § 300.502(a)(2) (requiring a school district, in response to a request for an IEE, to provide "the agency criteria applicable for independent educational evaluations"). If the District's explanation is insufficient to allow the parents to provide justification for the selected evaluator in a meaningful manner, the parents are by definition not afforded "the opportunity to demonstrate that unique circumstances justify an IEE that does not fall within the district's criteria." *Letter to Kirby*, 213 IDELR 233 (OSEP 1989), at 2. Considering these guiding principles in harmony, a school district certainly can be considered to have unnecessarily delayed in funding an IEE or filing for due process by obfuscating crucial information relevant to the parents' request for an IEE after the parents ask for that information.

Here, when Attwood emailed the District six days after receiving the October 13 letter to request information about the Policy's cost cap for visual processing IEEs and the rates Dr. Stephey charged, the District did not answer Attwood's questions and instead referred Attwood

to Lord, the SELPA's program manager, for inquiries about Dr. Stephey. AR 258.[8] It is true that nothing prevented Plaintiff's parents from reaching out to Dr. Stephey directly, or to Lord with the SELPA as suggested by the District, to obtain the missing information about how Dr. Stephey's IEE did not satisfy the District's cost criteria. But to the extent that Plaintiff's parents did not accept the District's invitation to investigate the cost of Dr. Stephey's IEE personally, "[t]he District's procedural responsibilities [under the IDEA] are not relieved by the students' or parents' failure to consent or cooperate." *William S. Hart*, 2014 WL 12493766, at *5; *see also Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055 (9th Cir. 2012) (noting that the IDEA and its implementing regulations "emphasize[s] the importance of parental involvement and advocacy, even when the parents' preferences do not align with those of the educational agency"). By directing Plaintiff's advocate to collect that information from a third party, rather than fully explaining the basis for its rejection of Dr. Stephey as required under § 300.503(b)(2), the District impermissibly attempted to foist its own responsibility to ensure compliance with the procedures under the IDEA onto Plaintiff's parents and expected Plaintiff's parents to expend needless energy tracking down the necessary information already in the District's possession. *See, e.g.*, Amanda J., 267 F.3d at 893 (finding that the school district "blatantly violated one of the [IDEA's] procedural requirements" because the district "had information in its records, which, if disclosed, would have changed the educational approach used for [the student]"). Due to the importance of the information about Dr. Stephey's fees and the Policy's cost cap, any delay in the parents receiving the missing information vital to the negotiation process would

---

[8]     At first blush, Attwood's request for information about the SELPA's cost maximum for visual processing evaluations could be viewed as duplicitous (and therefore unreasonable), since the District already attached the Policy to its October 13 email and had previously sent the Policy to Plaintiff's parents in other correspondence. *See* AR 257; *see also* AR 314-36 (the Policy as attached to a prior written notice letter sent to Plaintiff's parents on August 31, 2017). However, a plain reading of the Policy does not reveal what the actual cost maximum for a visual processing evaluation would be. The Policy lists numerous different cost criteria for different types of educational assessments, many of which relate to visual processing. *See* AR 322-23 (identifying cost criteria for "Visual Motor Integration," "Visual Acuity," "Visual Perception," and "Functional Vision"). As the ALJ found, the Policy "did not have a flat fee cost for a visual processing assessment," and the ALJ determined that the individual services related to visual processing added up to a total cost maximum of $900. AR 357. Yet neither the District, nor the ALJ in its decision, provided any explanation for the District's later conclusion that the true cost maximum under the Policy was $1,000, which is certainly not discernible from the cost criteria identified in the Policy. Because of the *present* confusion about this issue, it was eminently reasonable for Attwood to request clarification from the District on this point following receipt of the October 13 letter from the District.

correspond to a delay in the parents' ability to advocate on Plaintiff's behalf and would inherently be "unnecessary delay" under § 300.502(b)(2).

ii.   *The District Committed a Procedural Violation by Failing to Explain How Dr. Stephey Exceeded the Cost Cap Upon Request by Plaintiff's Parents*

Unsurprisingly, and contrary to the ALJ's decision, the administrative record conclusively establishes that there *was* such an unnecessary delay. Between October 19, 2017 and November 15, 2017, the District continued to request written justification of unique circumstances from Plaintiff's parents. *See* AR 280-81 (November 2 letter); AR 262 (November 7 letter); AR 265 (December 1 email, which also acknowledged that the District sent another letter on November 17); AR 263-64 (December 4 letter). During this timeframe, Plaintiff's parents continued to request the District to provide more information about how Dr. Stephey's IEE would not satisfy the District's cost maximum, but the District never did. *See* AR 259 (follow-up email from Attwood on October 19); AR 277-78 (November 15 emails); AR 265 (November 30 email). The fact that Plaintiff's parents never responded to the District's letters from November 2 and November 7, and never offered the written justification that the District sought, is immaterial because the parents could not respond effectively to the District's request for justification without the missing information they had requested.

The District also argues that, because Dr. Stephey did not identify a specific charge for a visual processing IEE in the rate sheet sent to the District and could not identify a single charge until after completing the evaluation, "it would have been impossible for [the District] to do so" in response to Attwood's email on October 19, 2017. *See* Dkt. 39 at 17. Yet the District had no problem representing unequivocally to Plaintiff's parents that Dr. Stephey "does not meet the cost maximum" for visual processing IEEs under the Policy, after merely looking at Dr. Stephey's rate sheet. *See* AR 256. It is wholly inconsistent for the District to argue before this Court that it could not estimate what Dr. Stephey's charges would be based on the rate sheet he provided, or even send Plaintiff's parents the rate sheet itself, and at the same time represent to Plaintiff's parents in October 2017 that Dr. Stephey did not meet the cost cap without qualification. The absurdity of the District's argument is further revealed by the fact that Dr.

Stephey ultimately billed only $800 for the IEE. *See* AR 268. The District simply has not

articulated a legitimate reason why it refused to cooperate with Plaintiff's parents' simple request

for more information, which the District had readily available at its disposal, about how the

District determined that Dr. Stephey did not meet the District's IEE criteria, even if an answer

could not be provided to the precise dollar amount of Dr. Stephey's yet-to-be-performed

evaluation.

     Neither has the District provided for justification why it could not feasibly reach out to

Dr. Stephey directly to obtain a more precise estimate of his fees for Plaintiff's IEE; the SELPA

evidently did the same thing for Dr. Morris, another evaluator chosen by Plaintiff's parents,

which resulted in Dr. Morris "adjust[ing] her rate sheet so that Royal Lord could approve her for

the neuropsych assessment for [Plaintiff]." AR 267. Plaintiff's parents even requested that the

District reach out to Dr. Stephey in this regard, *id.*, but the District has not explained why it did

not do so—or alternatively, why the District's efforts to do so proved ineffective. Again, the

onus is on the District, not Plaintiff's parents, to ensure that the IEE dispute is resolved without

unnecessary delay. *See William S. Hart*, 2014 WL 12493766, at *5 (affirming the ALJ's

conclusion "that § 300.502(b) places the onus on the District to act without unnecessary delay

upon the parent's request" for an IEE).

     In fact, even earlier in the parties' correspondence about a visual processing IEE for

Plaintiff, the District showed that it was unwilling to be proactive to satisfy its duties under the

IDEA. After Plaintiff's parents selected Dr. Stephey as their preferred visual processing

evaluator in a September 12 email, see AR 252, the District did not contact Dr. Stephey directly

despite the fact that Plaintiff's parents included contact information for Dr. Stephey in their

email. Rather, the District waited until September 26—two weeks after receiving the email—and

sent a letter to *Plaintiff's parents* asking for Dr. Stephey's curriculum vitae and rate sheet. *See*

AR 255. Dr. Stephey himself noted to the District on October 3, 2017 that, in Dr. Stephey's

experience, it was unusual for parents to be asked to collect information from a selected

independent evaluator rather than the school district reaching out to the evaluator directly. *See*

AR 307 ("I work collaboratively with about 30 districts and have never had a parent have to

track down this information."). The District's decision to send Plaintiff's parents a letter on September 26 asking for Dr. Stephey's rate sheet and curriculum vitae could also be seen as an unnecessary dilatory tactic in response to the parents' selection of Dr. Stephey as their preferred evaluator, given that the District was responsible to ensure that Dr. Stephey's IEE would be funded—or alternatively, that the District would file a due process complaint challenging Plaintiff's parents' selection of Dr. Stephey—without unnecessary delay. The District has provided no explanation for why it chose to task Plaintiff's parents with the responsibility to communicate with Dr. Stephey about his qualifications and fees in response to the selection of Dr. Stephey, and no legitimate explanation emerges from the record before the Court. Therefore, because the District failed to coordinate directly with Dr. Stephey in response to Plaintiff's parents selecting Dr. Stephey as their preferred visual processing evaluator, the District's unnecessary delay actually began on September 12, 2017.

In sum, nothing in the record suggests that it was somehow "necessary" for the District to withhold information about how Dr. Stephey's fees exceeded the District's cost cap, or that the resulting delay between the date Plaintiff's parents first requested that information and the date the District ultimately filed for due process was a "necessary" delay that encompassed good faith negotiations between the parties to resolve the IEE dispute amicably. Therefore, Plaintiff has met his burden to show by a preponderance of the evidence that the District unnecessarily delayed in filing for due process over the 84-day time period between September 12, 2017 and December 5, 2017. Such a timeframe is a relatively short but consistent with other case law finding an unnecessary delay. *See, e.g.*, *Pajaro Valley*, 2006 WL 3734289, at *3 (finding an unexplained delay of three months to be unnecessary). And even though the District has offered an explanation for the delay, being the communications between the parties in an attempt to resolve the IEE dispute, the specific facts of this case reveal the District's unreasonable refusal to inform Plaintiff's parents about how Dr. Stephey's fees exceeded the District's cost cap, which renders the District's explanation insufficient to find that delay "necessary." Accordingly, the Court REVERSES the ALJ's holding to the contrary on this issue.

       iii.    *The Record Is Insufficient as to Whether the District's Procedural Violation Impaired the Substantive Rights of Plaintiff or His Parents*

The fact that the District committed a procedural violation of the IDEA's implementing regulations is not the end of the analysis; the Court still "must determine whether that [procedural] violation affected the substantive rights of the parent or child." *L.M. v. Capistrano*, 556 F.3d at 909 (citations omitted). Substantive rights are violated where the procedural violation "significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child." 20 U.S.C. § 1415(f)(3)(E)(ii)(II); *L.M. v. Capistrano*, 556 F.3d at 909. Neither the ALJ, nor Plaintiff in this action, analyze whether Plaintiff's parents were substantively impacted by the District's delay in filing for due process, assuming such delay is unreasonable.

Nevertheless, the administrative record included a letter from the District to Plaintiff's parents on December 4, 2017, in which the District acknowledged that Plaintiff's parents "were not in attendance at the Individualized Educational Program review on December 1, 2017 for [Plaintiff]." AR 263. In the letter, the District noted that Plaintiff's parents "indicated that you will not attend an IEP meeting until the IEE's are completed," including the IEE for Dr. Stephey that had yet to be performed at that time. *Id.*; *see also* AR 278 (Plaintiff's mother stating by email that "a legally compliant IEP cannot be completed without proper assessment"). The District also stated that "we would have preferred to meet and hold the IEP meeting with you, however due to timelines and previous attempts to meet, we found it necessary to meet without you." AR 263.

"Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Amanda J.*, 267 F.3d at 892. The District's decision to hold an IEP meeting without Plaintiff's parents on December 1, a mere four days before the District filed its due process complaint, undoubtedly denied Plaintiff's parents the "opportunity to participate in the IEP formulation process," which is a sufficient basis to find that the parents' substantive rights have been infringed. *Id.* (citation omitted); *see also W.G. v. Bd. of Trs. of Target Range Sch. Dist.*, 960 F.2d 1479, 1484-86 (9th Cir. 1992) (affirming the district

court's ruling that the school district's development of an IEP without the involvement of the student's parents deprived the student of a FAPE), *superseded in part by statute on other grounds*.

However, attributing the absence of Plaintiff's parents from the IEP meeting to the District's unnecessary delay in filing for due process is less clear. It is apparent that Plaintiff's parents voluntarily withheld themselves from participating in the IEP meeting, a decision which might have been justified in light of the District's refusal to provide the information about Dr. Stephey's fees to Plaintiff's parents in response to their request. But the record does not suggest that, had the District filed for due process without unnecessary delay prior to the December 1 IEP, Plaintiff's parents would have attended the IEP meeting. Plaintiff's mother clearly indicated her position that "a legally compliant IEP cannot be completed without proper assessment," AR 278, suggesting that Plaintiff's parents were unwilling to attend an IEP meeting until Dr. Stephey's visual processing IEE was performed in full. Thus, the District's unnecessary delay in filing for due process, and the District's unreasonable failure to provide Plaintiff with the requested information about Dr. Stephey's fees, does not necessitate a finding that the District caused unnecessary delay in the completion of the actual visual processing assessment to be performed by Dr. Stephey.

Remand to the state administrative body is an appropriate disposition where the court "does not believe the record is sufficient to permit it to make the highly nuanced judgments necessary to resolve the claim." *Jessica E. v. Compton Unified Sch. Dist.*, No. CV16–04356–BRO (MRWx), 2017 WL 2864945, at *7 (C.D. Cal. May 2, 2017) (internal quotation marks and citations omitted). Because the ALJ did not issue a determination as to whether the District's delay in filing for due process from September 12, 2017 to December 5, 2017 infringed upon the substantive rights of Plaintiff or his parents, and because the parties did not address this issue at all in their briefing before this Court, the Court has no basis to resolve that issue conclusively at the present time.

Therefore, in light of the Court's reversal of the ALJ's decision and the Court's finding that the District unnecessarily delayed in filing for due process on December 5, 2017, the Court

REMANDS to the ALJ for the limited determination of whether the District's unnecessary delay affected Plaintiff's or his parents' substantive rights under the IDEA, and if so, what Plaintiff's remedy should be in light of the fact that the District apparently already reimbursed Plaintiff's parents for Dr. Stephey's IEE.[9] *See M. S. v. L.A. Unified Sch. Dist.*, No. 2:15-cv-05819-CAS-MRW, 2019 WL 334564, at *15 (C.D. Cal. Jan. 9, 2019) (remanding matter to the ALJ "for a determination regarding the appropriate relief" after reversing the ALJ's decision and finding that the school district deprived the plaintiff of a FAPE). If the ALJ finds it necessary to consider additional evidence from the parties on these issues, then the ALJ should hear any such additional evidence it finds appropriate. *See Jessica E.*, 2017 WL 2864945, at *7.

> 2. *Settlement Negotiations between December 2017 to April 25, 2018*

The remainder of Plaintiff's legal position in this action is that the District unnecessarily delayed in resolving its own due process complaint by failing to agree to pay the cost cap under the Policy for Dr. Stephey's IEE once the District was aware that Plaintiff's parents were willing to pay all amounts in excess of the cost cap.

The ALJ addressed Plaintiff's argument in its decision in some capacity, even though that issue was not included in the pending issues raised in Plaintiff's due process complaint.[10] The

---

[9] Read states in his declaration that Plaintiff's parents provided the District with the requisite documentation for reimbursement of Dr. Stephey's fees on January 7, 2019, and that Read is "informed and believe[s] that the District has issued reimbursement to [Plaintiff's] parents for Dr. Stephey's evaluation of Plaintiff" as of March 15, 2019. Read Decl. ¶ 23.

[10] Plaintiff had sought to add a third issue to his due process complaint in his pre-hearing conference statement, identifying an issue as "[w]hether the parents' offer to accept the District's cost cap for Dr. Stephey and to pay costs above that cost cap, required the District to fund the evaluation up to that amount." AR 145. Plaintiff presented this issue "as a clarification of the issues raised in his complaint," but Plaintiff noted that "[s]hould OAH deem this issue to be an amendment to [Plaintiff's] complaint, [Plaintiff] will not raise this issue." *Id.* At the telephonic pre-hearing conference, the ALJ stated that she did not see that issue raised in Plaintiff's complaint, and in response Whiteleather conveyed that she intended for this newly raised issue to be a "clarification" of the issues raised in the complaint. AR 387. Whiteleather acknowledged that whether the District should be held to pay its cost cap for Dr. Stephey's IEE, if Plaintiff's parents were willing to pay the excess, pertained more to the question of the appropriate remedy for Plaintiff if Plaintiff were to succeed on his due process complaint or in defending the District's complaint. *Id.* Ultimately, Whiteleather stated that "[w]e don't need to amend" Plaintiff's due process complaint to add such an issue. *Id.*
A party requesting a due process hearing under the IDEA "shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint] . . . unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B); Cal. Educ. Code § 56502(i). Nevertheless, in the June 14, 2018 decision, the ALJ still analyzed the question of whether the District unnecessarily delayed in resolving the IEE dispute by failing to accept Plaintiff's evaluation in excess of the District's cost cap. *See* AR 364-65. Thus, the Court rejects the District's argument that the "only relevant facts" for the Court's review are those between August 2017 and December 5, 2017, the date the District filed its due process complaint. *See* Dkt. 39 at 13.

36

ALJ determined that the parties were embroiled in negotiations between February 2018 and April 2018 to settle the consolidated matter before OAH, including both parties' due process complaints against the other. AR 364. The ALJ rejected Plaintiff's argument that the District should have paid its $1,000 cost maximum for Dr. Stephey's IEE in mid-February 2018 when Plaintiff's parents communicated their willingness to pay all costs in excess of the cost cap, finding that Plaintiff "never provided any documents, emails or otherwise, supporting that he accepted the SELPA's cost criteria before late April 2018." *Id.*

The ALJ's factual conclusion is clearly in error in light of the supplemental evidence submitted by the parties, which the ALJ apparently did not allow to be admitted into the administrative record. Whiteleather sent the District a letter on February 12, 2018 stating unequivocally that Plaintiff's parents "offer to pay the amount of Dr. Stephey's visual processing IEE that is over and above $1,000." Dkt. 28-5 at 1. Although Whiteleather also represented that she desired attorneys' fees in addition to the parents' offer, the February 12 letter directly rebuts the ALJ's conclusion that there was no evidence confirming that such an offer was made in mid-February. Thus, the ALJ's factual conclusion in this regard must be reversed.

That being said, the ALJ correctly determined that Plaintiff did not provide any evidence that any delay between February 2018 and April 2018 in resolving the District's due process complaint impaired the substantive rights of either Plaintiff or his parents. *See* AR 365. In the ALJ's decision, the ALJ determined that Plaintiff "never presented evidence at hearing" that any delay between mid-February and late April 2018 resulted in the denial of a FAPE for Plaintiff or significant impeded Plaintiff's parents in their attempt to participate in the decisionmaking process. *Id.* The ALJ elaborated that Plaintiff's conclusion that his parents were unable to participate in the decisionmaking process was merely a conclusion without supporting evidence, "*e.g.* facts such as testimony documents, *etc.*" *Id.*

Plaintiff has presented no evidence or argument whatsoever to address this finding of the ALJ, so the Court has no basis to reverse the ALJ's decision in this regard. To the extent that Plaintiff purports to rely on the fact that Plaintiff's parents were excluded from the IEP meeting held by the District on December 1, 2017, see AR 263, that meeting occurred prior to the

District's filing for due process on December 5. Therefore, even if the District unnecessarily

delayed in resolving its due process complaint between February 2018 and April 2018 in light of

a clear offer from Plaintiff's parents to pay all costs of Dr. Stephey's IEE above the District's

cost cap, Plaintiff has not identified that this delay caused a denial of a FAPE or impeded with

Plaintiff's parents' ability to participate in the IEP process.

Because any potential substantive repercussions of the District's unnecessary delay

occurred prior to the District's filing of the due process complaint, Plaintiff did not meet his

burden of proof to show entitlement to relief in his due process complaint for the period between

February 12, 2018 and April 25, 2018, even if the District unnecessarily delayed in resolving its

own complaint over that period in violation of 34 C.F.R. § 300.502(b)(2). Therefore, the Court

need not address the parties' various arguments about the legal significance of Plaintiff's

parents' offer to pay the excess of the District's cost cap in February 2018, or whether the

settlement negotiations between the parties from February to April 2018 constituted

"unnecessary delay" on the part of the District.[11] Accordingly, the Court AFFIRMS the ALJ's

decision on this secondary issue addressed in the ALJ's decision.

---

[11] In any event, it is worth noting that the legal significance of Plaintiff's parents' offer to pay the excess of the District's cost cap is unclear. The District points out that the IDEA's implementing regulations allow for a parent to obtain an IEE at "public expense," which "means that the public agency either pays for the full cost of the evaluation or ensures that the evaluation is otherwise provided at no cost to the parent." 34 C.F.R. § 300.502(a)(3)(ii). OSEP has issued an advisory letter addressing the situation of when a public agency is asked to fund an IEE that exceeds the agency's cost criteria. *See Letter to Petska*, 35 IDELR 191 (OSEP 2001). In the letter, OSEP states:

> If the total cost of the IEE exceeds the maximum allowable costs and the school district believes that there is no justification for the excess cost, the school district cannot in its sole judgment determine that it will pay only the maximum allowable cost and no further. The public agency must, without unnecessary delay, initiate a hearing to demonstrate that the evaluation obtained by the parent did not meet the agency's cost criteria.

*Id.* at 2-3. The importance of a public agency initiating a due process hearing is vital for the agency to protect itself against unnecessarily expensive IEEs; as OSEP explained in a different advisory letter, "[i]f the public agency chooses not to initiate a due process hearing [to demonstrate that the parents' chosen evaluator does not meet the agency's IEE criteria], it *must* ensure that the parent is reimbursed for the evaluation," regardless of the cost of the IEE. *Letter to Parker*, 41 IDELR 155, at 2 (OSEP 2004) (emphasis added). The District relies on this authority to argue that, even if Plaintiff's parents were willing to pay all amounts in excess of the District's cost cap, the IEE itself still would not satisfy the District's criteria for independent evaluations, and therefore "the District's obligation to ensure that parents receive an IEE at public expense pursuant to section 300.502 would not be satisfied if it agreed to fund the IEE up to [its] $1,000 cost cap." Dkt. 48 at 19. The District takes the position that a written agreement between Plaintiff's parents and the District would be necessary to confirm that Plaintiff's parents were willing to forego their right to an IEE wholly at public expense. *Id.* Plaintiff essentially argues in response that a school district

## IV.  Conclusion

Based on the Court's findings of fact and conclusions of law set forth above, the Court REVERSES the ALJ's conclusion that the District did not unnecessarily delay in filing its due process complaint on December 5, 2017. Based on the evidence in the record, the District unreasonably refused to provide Plaintiff's parents with necessary information about how Dr. Stephey's IEE exceeded the District's cost criteria after the parents requested such information. The Court REMANDS to the ALJ for the limited determination, consistent with the findings in this Order, of whether the District's unnecessary delay affected Plaintiff's or his parents' substantive rights under the IDEA, and if so, what is the appropriate remedy for Plaintiff's due process claim.

However, the Court AFFIRMS the ALJ's conclusion that, even if the District unnecessarily delayed in prosecuting its due process complaint between February 2018 and April 2018, Plaintiff did not meet his burden of proof to show that such an unnecessary delay affected Plaintiff's or his parents' substantive rights. Therefore, the Court need not reach the question primarily addressed by the parties as to whether the District actually unnecessarily delayed in resolving its due process complaint during this secondary time period.

This action is stayed pending the ALJ's determinations on the remanded issues. *See Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 152 F.3d 1159, 1160-61 (9th Cir. 1998) (per curiam) (finding that the district court exceeded its authority by terminating, rather than

---

must prosecute its due process complaint to completion without unnecessary delay as part of the district's obligations to "fund or file" under § 300.502(b)(2), and that as soon as the District received notice of Plaintiff's parents' willingness to pay the excess of Dr. Stephey's cost cap, the District no longer had a basis to assert that Plaintiff sought an IEE inconsistent with the Policy's cost criteria and was obligated to withdraw its due process complaint immediately.

The Court has found no authority that addresses this issue directly. One district court acknowledged the same argument raised by a different school district but declined to address the argument because it was not presented to the ALJ in the underlying administrative proceedings. *See Goleta*, 2017 WL 700082, at *6-7 ("[T]his court does not reach the question whether a school district must, or may, pay a portion of an independent educational evaluator's fees up to the district's reasonable cost cap where the evaluator's fee exceeds that cap and the parent agrees to pay the difference."). Similar to *Goleta*, here the parties did not expressly raise this argument before the ALJ, and the ALJ did not issue a ruling on this question. This issue is one of substantive education policy under the IDEA, and for the Court to issue an interpretation of the relevant statutory and regulatory provisions without a decision from the ALJ on this subject would be unnecessary and would amount to the Court substituting its "own notions of sound educational policy for those of the school authorities which [it] review[s]." *Ojai*, 4 F.3d at 1472 (internal quotation marks and citations omitted).

39

1  staying, the action after remanding to the due process hearing officer for a decision regarding the

2  appropriateness of the student's specialized private education).

3        Plaintiff shall be deemed as the prevailing party in this appeal of the ALJ's decision

4  pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I), but not as to the underlying administrative

5  proceedings given the fact that the ALJ has yet to rule on the remanded issues.[12] Counsel for

6  Plaintiff is directed to file a properly-noticed motion for attorneys' fees incurred only in this

7  appeal action, and not any fees incurred in the underlying administrative proceedings, within 14

8  days of the date of this Order.

9

10        IT IS SO ORDERED.

11  Date:   July 18, 2019

12

13                                        HON. STEPHEN V. WILSON
                                          UNITED STATES DISTRICT JUDGE
14

15

16  [12]      The Court previously noted that Plaintiff does not seek to have the Court issue a ruling in this action
    declaring that Plaintiff's parents were the prevailing party with respect to the District's withdrawn due process
    complaint, and that therefore the Court would not entertain argument on that subject. See Dkt. 50 at 2. Indeed, the
17  ALJ noted that Plaintiff had conflated the District's duty to file for due process without unnecessary delay with the
    issue of whether attorneys' fees would be appropriate for the District's withdrawn due process complaint against
18  Plaintiff. See AR 365. Plaintiff again evinced the same misunderstanding in his trial briefing submitted to the Court
    in this action, by citing to the standards for an award of attorneys' fees under the IDEA. See Dkt. 31 at 10-12.
19  Because Plaintiff does not seek a prevailing party determination on the District's withdrawn due process complaint
    in the Complaint filed in this action, such relief is outside the scope of issues to be resolved in this action, in which
20  Plaintiff seeks only a review of the ALJ's decision denying Plaintiff's due process complaint against the District.
            Nevertheless, the Court is inclined to believe that Plaintiff's parents may fairly be determined to be the
21  prevailing party as to the District's withdrawn due process complaint, and therefore Plaintiff's parents may be
    entitled to recover reasonable attorneys' fees incurred in connection with that due process complaint. See J.B. v. San
22  Jose Unified Sch. Dist., No. C 12-06358 SI, 2013 WL 1891398, at *4 (N.D. Cal. May 6, 2013) (rejecting the
    argument that a school district's voluntary withdrawal of a due process complaint does not amount to a "judicially
23  sanctioned change in the parties' relationship" as necessary to award attorneys' fees under the IDEA since the
    district's dismissal of its complaint without prejudice "precluded [the district] from refiling its complaint after
24  waiting seven months, because to do so would constitute 'unnecessary delay'" and "would have essentially
    eliminated the right of the [d]istrict to further contest the IEE"). Nothing prevents Plaintiff from filing a new action
25  seeking a prevailing party determination and an award of attorneys' fees for the District's withdrawn due process
    complaint within the state statute of limitations period applicable to such requests for attorneys' fees. See Meridian
26  Joint Sch. Dist. No. 2 v. D.A., 792 F.3d 1054, 1064 (9th Cir. 2015) (holding that "a request for attorneys' fees under
    the IDEA is more analogous to an independent claim than an ancillary proceeding" and that therefore the timeliness
27  of a request for attorneys' fees as the prevailing party is assessed "under the most analogous state statute of
    limitations"). As one district court noted, California's analogous limitations period for a request for attorneys' fees
28  under the IDEA appears to be three years, as provided by Cal. Civ. Proc. Code § 338(a). See Ostby v. Oxnard Union
    High, 209 F. Supp. 2d 1035, 1045 (C.D. Cal. 2002); Meridian, 792 F.3d at 1062-64 (citing approvingly to Ostby).